In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-09-00150-CV


____________________



IN RE WAYNE A. REAUD






Original Proceeding






 OPINION
 

 This mandamus proceeding involves a discovery dispute about whether the relator,
a nonparty witness who is one of the corporation's directors, can be ordered by the trial court
to attend a deposition based on a notice served on the corporation's trial counsel. After
reviewing the record, we find no evidence to support the trial court's implied finding that the
director was subject to the corporation's control. Consequently, a subpoena is required to
compel his appearance for a deposition. Because no subpoena for this nonparty witness was
issued, we conclude the trial court was without authority to order the director to appear for
a deposition based on a notice alone. We conditionally grant the relator's request that he
should be protected from attending the deposition based on the notice, and we direct the trial
court to vacate its March 30, 2009, order and replace it with an order sustaining the relator's
objection to the notice that requested his presence at the deposition.

Procedural History


 Huntsman Corporation (Huntsman) is a large global manufacturer and marketer of
differentiated chemical products and inorganic chemical products. Following its attempted
merger with Hexion Specialty Chemicals, Inc., Huntsman filed suit against Credit Suisse
Securities (USA) LLC and Deutsche Bank Securities, Inc. (referred to collectively as the
"Bank"), in Montgomery County, Texas. In its petition, Huntsman alleged that the Bank
conspired to interfere with a merger agreement between Huntsman and Bassell AF (an
affiliate of Access Industries), and that the Bank also interfered with a subsequent merger
agreement between Huntsman and Hexion Specialty Chemicals, Inc. As part of its discovery
in the lawsuit, the Bank filed an amended notice of oral and videotaped deposition of Wayne
A. Reaud, (1) one of Huntsman's outside directors, and served the notice on Huntsman's
counsel "by reason of the provisions of Texas Rule of Civil Procedure 199.3." Huntsman
advised the Bank's attorneys that Reaud, "had retained separate counsel to represent him in
connection with this case and that the [Bank] should deal directly with Mr. Reaud's counsel
to schedule the deposition." When the Bank's counsel did so, Reaud's attorneys advised
them that Reaud "is not 'subject to the control of' Huntsman within the meaning of Texas
Rule of Civil Procedure 199.3 and, therefore, must be served with a subpoena in Beaumont
if the Defendants wish to compel his appearance." 

 The Bank then filed a motion to compel the deposition, arguing that "[a]s one of
Huntsman's directors, Mr. Reaud is 'subject to the control of' Huntsman and thus obligated
to appear for his deposition without the necessity of a subpoena." Reaud filed a motion for
protection from the deposition, and, among other arguments, asserted that he was not
controlled by Huntsman. Reaud's affidavit, which accompanied his motion, states in part:

 4. I am an outside and independent director of Huntsman Corporation. 
As an outside and independent director, I am not 'subject to the control' of
Huntsman Corporation. As I understand it, I was brought in as an independent
director because of my independence from the corporation. It is my
understanding that as an independent director, I have a fiduciary duty to
Huntsman Corporation to exercise my independent judgment. If I had thought
that as an outside independent director I could be summoned to any forum in
which this company was engaged in litigation, I would not have accepted this
responsibility. 

 Huntsman filed a response to the motion to compel in which it asserted that Reaud
was an outside director and also an attorney, and further asserted that Reaud is the current
chairman of its Litigation Committee, which "oversees all aspects of the prosecution of
Huntsman's claims in this case." Huntsman asserted that "Mr. Reaud's legal advice to
Huntsman is plainly privileged by the attorney-client privilege and the work product doctrine,
as are his communications with other senior Huntsman officers for the purpose of facilitating
the rendition of legal advice to the company."

 The Bank then filed a response to Reaud's motion for protection and included 
evidence that Reaud was a director who had special and unique knowledge of the mergers
involved in the current lawsuit. The Bank's evidence further showed that Huntsman
compensated Reaud with cash, stock, stock options and bonuses for serving as a director. 
Included in the Bank's response was evidence that Huntsman had produced two of its outside
directors, not including Reaud, in response to deposition notices issued in Hexion's Delaware
suit against Huntsman over the proposed merger. The Bank's response further contained 
evidence that in this case, Huntsman had produced another one of its outside directors by
agreement when the Bank requested that director's deposition, and had issued hold notices
to its directors in connection with this case. The Bank's response argues that all of this
evidence showed that Reaud is "subject to Huntsman's control." 

 On March 27, 2009, the trial court conducted a hearing on Reaud's request for a
protective order. The parties presented no additional evidence at the hearing, and the trial
court did not enter written findings. At the end of the hearing, however, the trial court
announced that it would not require the Bank to serve Reaud with a subpoena and then
immediately explained: "He's a director." 


Analysis


The Rules of Procedure in Issue
 
 The dispute before us directly involves two of the Texas Rules of Civil Procedure. 
See Tex. R. Civ. P. 199.3, 205.1. Rule 199.3 provides:

 199.3. Compelling Witness to Attend

 A party may compel the witness to attend the oral deposition by serving
the witness with a subpoena under Rule 176. If the witness is a party or is
retained by, employed by, or otherwise subject to the control of a party,
however, service of the notice of oral deposition upon the party's attorney has
the same effect as a subpoena served on the witness.


 Rule 205.1 provides in pertinent part:

 205.1. Forms of Discovery; Subpoena Requirement

 A party may compel discovery from a nonparty--that is, a person who
is not a party or subject to a party's control--only by obtaining a court order
under Rules 196.7, 202, or 204, or by serving a subpoena compelling:


 (a) an oral deposition[.] 


Burden of Proving Control 



 As is obvious under the Texas Rules of Civil Procedure, a party may be compelled to
present a nonparty witness who is subject to its control. To determine if the trial court erred,
we first address which party possessed the burden of proving to the trial court that Reaud was
subject to Huntsman's control. Rules 199.3 and 205.1 do not expressly provide a procedure
for resolving a dispute over control. See id.

 In this case, Reaud, Huntsman's director, responded to the motion to compel by filing
a motion for protection to which he attached his affidavit. His affidavit contained his sworn
statement that he was not "subject to the control" of Huntsman, and Reaud further asserted
that he did not have "any unique or superior knowledge of the underlying transactions that
give rise to this lawsuit." At the hearing on the motions, the trial court first heard the
argument from the Bank's attorneys. 

 Based on the record, it is clear the parties were attempting to follow the procedure
concerning apex depositions as outlined by the Texas Supreme Court. See In re Alcatel USA,
Inc., 11 S.W.3d 173, 175 (Tex. 2000) (orig. proceeding) (suggesting that the high-level
corporate official file a motion for protection with an affidavit denying knowledge of
relevant facts); Crown Central Petroleum Corp. v. Garcia, 904 S.W.2d 125, 128 (Tex. 1995). 
Thus, it appears the parties assumed that, in light of Reaud's affidavit that he possessed no
unique or superior knowledge relevant to the litigation, the Bank had the burden of proving
to the trial court that Reaud was subject to Huntsman's control.

 With respect to nonparty witnesses generally, it is not apparent to us that the burden-shifting procedure applicable to apex depositions is necessarily required to resolve the
separate issue of whether a nonparty witness is subject to a party's control. We expressly do
not resolve where the Rules of Civil Procedure generally place the burden of proving control
because the parties proceeded without objection in the trial court and neither argues in this
proceeding that the burden was misplaced. Since the parties in this case followed the apex
deposition procedure, and since Reaud's affidavit under that procedure served to shift
Reaud's burden, if he had one, to the Bank, we hold that for purposes of this mandamus
proceeding the Bank bore the burden on the question of control at the time of the hearing in
the trial court. 

Control Over Directors


 Under Texas law, a director is a person who is or was a director of the corporation. 
See Tex. Bus. Corp. Act Ann. art. 2.02-1 (A)(2) (Vernon Supp. 2008). (2) The corporation's
board of directors directs the management of the corporation's affairs. Id. art. 2.31 (Vernon
2003). Thus, generally, the directors by law manage the corporation, not vice versa. 

 Rules 199.3 and 205.1 expressly mention three categories of nonparties who may be
required to attend depositions without being subpoenaed, the first two of which are specific
while the last category, constituting those persons subject to another's control, is very
general. The first category is a party's employees. The rules require the employer to produce
its nonparty employees at depositions when the employer's attorney of record receives a
notice of the deposition. See Tex. R. Civ. P. 199.3, 205.1; see also Tex. R. Civ. P. 21a. 
Although the rationale is not expressed in the rules, we assume the employee-nonparty-witness is required to appear because his employer has the ability to establish his terms of
employment, to fire him, to control his pay, and to decide whether he receives a future
promotion or demotion. 

 The second category refers to retained experts, (3) a category of nonparties required by
Rule 199.3 to be produced on notice. Retained experts are also subject to being "controlled"
by the attorney for the party who, along with his client, has the power to terminate the
relationship in the event the expert failed to comply with the attorney's instruction to appear
for deposition. The rules also require the party who retained the expert to pay his fees for
attending depositions. Tex. R. Civ. P. 195.7.

 The third category of nonparty witnesses are those who are "otherwise subject to the
control of a party[.]" Tex. R. Civ. P. 199.3. The term, "otherwise controlled," is not defined
by the procedural rules. In this instance we think the doctrine of ejusdem generis applies to
restrict the potentially broad meaning of "otherwise controlled" as used in Rules 199.3 and
205.1. Ejusdem generis means that "'when words of a general nature are used in connection
with the designation of particular objects or classes of persons or things, the meaning of the
general words will be restricted to the particular designation.'" State v. Fidelity & Deposit
Co. of Md., 223 S.W.3d 309, 312 (Tex. 2007) (quoting Hilco Elec. Coop. v. Midlothian
Butane Gas Co., 111 S.W.3d 75, 81 (Tex. 2003)). In other words, ejusdem generis limits the
undefined, general term "otherwise controlled" as used in Rules 199.3 and 205.1 to include
only control of the same kind, class, or nature as the types of control parties would have over
employees or retained experts. A related rule of construction, noscitur a sociis ("a word is
known by the company it keeps"), compels the same conclusion. See U.S. Fid. & Guar. Co.
v. Goudeau, 272 S.W.3d 603, 606 (Tex. 2008); see also Fiess v. State Farm Lloyds, 202
S.W.3d 744, 750-751 (Tex. 2006). While the current rules contain language that allow them
to reach beyond retained experts and employees, it is now clear that these two rules do not
extend to nonparties over whom the party does not have the type of control as it has over an
employee or a retained expert. 

 We also do not find evidence in the Texas statutes governing corporate structure 
proving, with respect to the corporation's power to require the director to attend a deposition, 
that Texas corporations have the necessary control to make the director appear. The Business
Corporations Act describes the conditions for "terminating" a director. "Absent resignation
or removal in accordance with provisions of the bylaws or the articles of incorporation, each
director shall hold office for the term for which he is elected and until his successor shall
have been elected and qualified." Tex. Bus. Corp. Act Ann. art. 2.32(B) (Vernon Supp.
2008). Unless otherwise provided by the Business Corporation Act, the corporation's articles
of incorporation, or bylaws, a director may be removed by the shareholders. Id. art. 2.32(C). 
Thus, generally, a director is subject to removal by the shareholders of the corporation, not
the corporation's officers. 

 Further, we find no statute addressing the removal of a Texas director for his failure
to attend a deposition. Thus, the issue of whether Huntsman could control Reaud by causing
his removal as a board member depends on whether its bylaws or articles of incorporation
provide it such a right. But, the parties did not submit either Huntsman's bylaws or its
articles of incorporation in their motions filed in the trial court. 

 We also find nothing in the evidence before the trial court, in Texas statutes, or in
Texas caselaw that tends to show Huntsman could alter or reduce Reaud's director's fees for
a refusal to attend a noticed deposition. As one treatise explained:

 Many large public corporations now pay their directors an honorarium for
attending meetings. Others pay fairly substantial sums to outside persons to
serve as directors. The latter practice recognizes that, since modern directors
of publicly held corporation often have insignificant shareholdings, direct
compensation may be the best way to provide remuneration for the important
function that directors perform.

20A Robert W. Hamilton, Texas Practice: Business Organizations § 35.4 (2d ed.
2004) (footnote omitted). This treatise also points out that "[t]he Texas Business Corporation
Act is silent as to whether directors are entitled to compensation for their services, and there
appears to be no Texas case that has squarely considered the question." Id. (footnote
omitted). We assume that the matter of compensation of directors is addressed in
Huntsman's articles of incorporation or bylaws; however, as discussed above, these were not
before the court. Given the Bank's burden on the control issue, we find that there is no
evidence that shows Reaud could be controlled by any power possessed by Huntsman over
his fees. 

 The Bank's evidence at the hearing also did not address whether Reaud could be
promoted or demoted by his removal from any committees of the board based on his refusal
to comply with the deposition notice served on Huntsman's attorney. Article 2.36 of the
Texas Business Corporation Act allows the board to designate certain directors to serve on
committees, but only "[i]f the articles of incorporation or bylaws so provide." Tex. Bus.
Corp. Act Ann. art. 2.36(A) (Vernon Supp. 2008). Because the articles and bylaws are not
in the record, and because no witness testified that Reaud could be reassigned, we do not
know whether provisions in Huntsman's bylaws or in its articles would allow Reaud's
removal from a committee of the board under these circumstances. Nevertheless, we note
that no committee of the board of directors has authority to fix the compensation of any
member of the board. Tex. Bus. Corp. Act Ann. art. 2.36(B)(11) (Vernon Supp. 2008). 
Thus, it appears that the board of directors as a body must act on fees paid to its directors,
and that the rules governing the board's authority to alter these fees, if any, would be found
in the bylaws or articles of incorporation that were not before the trial court. Even if the
body could act to alter a board member's director's fees, however, the members of the board
are elected by the shareholders. 

 As applied to Reaud, there is no evidence that Reaud was subject to termination,
discipline, or a reduction in his fees as a director based upon his refusal to attend the
deposition under the circumstances of a notice without an accompanying subpoena. In
reaching our conclusion on this issue, we wish to make clear that we do not disagree with the
trial court's implied finding that Reaud had unique or superior knowledge of relevant facts. 
In addition, we do not imply that Reaud is not subject to subpoena for deposition on
nonprivileged matters. Under the record before us, which does not contain the corporation's
articles or bylaws, and based on the Texas statutes relevant to corporate governance, we hold
that there is no evidence in the record to support the trial court's implied finding that
Huntsman could control Reaud's appearance at a deposition as a person subject to the control
of a party. 

 The Bank contends, however, that Reaud's status as a director makes him subject to
the requirement that he appear for deposition by notice served on Huntsman's attorneys. In
its argument, it relies on language contained in Rule 199.3 that a notice has the same effect
as a subpoena if the nonparty witness is retained by, employed by, or otherwise subject to the
control of a party. The sole case cited by the Bank in support of its argument on this specific
issue is Wal-Mart Stores Inc. v. Street, 754 S.W.2d 153 (Tex. 1988) (orig. proceeding) (per
curiam). In Street, Wal-Mart sought relief through a writ of mandamus from a trial court's
order that required Sam Walton, the chairman of Wal-Mart's board of directors, to give a
deposition. Id. at 154. At that time, Rule 201(3) of the Rules of Civil Procedure provided 
that notice could be directed to "'an agent or employee who is subject to the control of a
party.'" Id. (quoting former Rule 201(3) of the Texas Rules of Civil Procedure, repealed
effective January 1, 1999). (4) Without discussing the record pertinent to the issue of Wal-Mart's control over Walton, the Texas Supreme Court stated that "[o]n the present record we
find no clear abuse of discretion in Judge Street's decisions that Walton is an agent of the
corporation subject to its control. . . ." Id. at 154-55. 

 Without knowing the state of the record before the Street Court concerning the proof
surrounding Wal-Mart's control over Walton, we cannot determine whether the case stands
for the proposition asserted by the Bank that a director, by virtue of his position, is subject
to the corporation's control. For example, we do not know whether the record contained
Wal-Mart's corporate bylaws or articles of incorporation, Arkansas statutes relevant to the
rules on corporate structure, or Arkansas statutes relevant to the duties of Arkansas directors,
or whether the testimony of witnesses explained how the rules of corporate governance in
Wal-Mart's case made Walton subject to Wal-Mart's control. In any event, we can glean
from the sparse discussion about the record in Street that Walton had more of a connection
to Wal-Mart than the connection shown to exist between Reaud and Huntsman. Unlike the
record here, in Street the record showed that Walton was the president of Wal-Mart when the
underlying accident occurred, but that he was not an employee when the notice was served,
that Walton was Wal-Mart's Board Chairman when the notice was issued, and that he was
a major shareholder. Id. Here, there is no evidence that Reaud was ever an officer of
Huntsman or its board chairman, nor is there evidence that Reaud is a major shareholder in
terms of the total shares issued by the corporation. 

 Most importantly, Street was decided under procedural rules that were repealed as of
January 1, 1999, and the former rule considered in Street contained specific language
requiring a party to produce an agent under its control. See Street, 754 S.W.2d at 154. That
language is no longer part of the Rules of Civil Procedure under consideration here. Compare
 Tex. R. Civ. P. 201(3), 43 Tex. B.J. 767, 774 (1981; repealed 1999, 61 Tex. B.J. 1140) with 
Tex. R. Civ. P. 199.3, 205.1. In Street, the Texas Supreme Court specifically relied upon an
implied finding that Walton was Wal-Mart's agent. Street, 754 S.W.2d at 154. Rules 199.3
and 205.1, the Rules of Civil Procedure involved here, do not contain the word "agent;" so
to the extent the Supreme Court utilized Walton's status as Wal-Mart's agent there is no such
requirement to do so under the current rules. 

 The Bank also contends that the fact that Huntsman had produced other directors 
requested through a notice is evidence that directors are subject to Huntsman's control. The
Bank further argues that Huntsman's request that directors hold any files relevant to the
litigation is evidence of control. We are not persuaded by the Bank's argument, since the
directors' cooperation avoided any need for Huntsman to confront the issue. Further, the fact
that the directors may have a fiduciary duty to preserve evidence on notice to do so involves
different considerations than the issue before us here, which concerns the party's power to
compel the witness to attend a deposition. 

 Finally, the Bank points out that Texas Rule of Civil Procedure 215.2(b) authorizes
the trial court to sanction a party for its director's failure to comply with a proper discovery
request, and argues that the fact that Rule 215.2 reaches the director necessarily implies that
directors are subject to the corporation's control. However, we note that the sanctions are
allowed when a party fails to comply with a "proper" discovery request, and we further
believe that the trial court's discovery order must likewise be "proper" to justify a sanction. 
Consequently, we do not agree that Rule 215.2 creates tension in our interpretation of Rules
199.3 and 205.1. 

 To summarize, the record in this case contains no evidence proving that Huntsman
possessed the type of control implicated by the Rules of Civil Procedure concerning its
director Reaud. For the above reasons, we find that Street is distinguishable and does not
control our resolution of the issue before us. In conclusion, we hold that there was no
evidence to show that Huntsman controlled Reaud's decision about whether to appear at a
deposition that he was not subpoenaed to attend. In the absence of such evidence, the trial
court abused its discretion in ordering Reaud's appearance and the deposition, and further
abused its discretion in applying the order to him personally. In light of our holding that the
deposition, as noticed, is not sufficient to compel Reaud's appearance, we need not reach the
separate but substantial issue the parties raise concerning the trial court's decisions on how
to address problems involving the attorney-client privilege. Tex. R. App. P. 47.1. (requiring
appellate court's opinion to be as brief as practicable but to address every issue raised that
is necessary to final disposition). 

 We are confident that the trial court will vacate its order of March 30, 2009, and grant
Reaud's request that he not be required to appear without first being subpoenaed. The writ
shall issue only if the trial court does not comply.

 PETITION CONDITIONALLY GRANTED.

 PER CURIAM


Submitted on May 7, 2009

Opinion Delivered May 15, 2009

Before McKeithen, C.J., Kreger and Horton, JJ.
1. Reaud is an attorney licensed to practice law in Texas, founder of the law firm now
named Reaud, Morgan & Quinn, and one of the attorneys that represented the State of Texas
in its litigation against the tobacco industry. 
2. Based on the enabling language of the Business Organizations Act, that Act rather
than the Business Corporations Act might apply to Huntsman, but the record before us does
not show whether Huntsman filed any documents with the Secretary of the State of Texas to
have made it applicable. See Tex. Bus. Orgs. Code Ann. § 402.004-.005(a) (making
January 1, 2010, the effective date of the Texas Business Organizations Code to foreign
corporations registered in Texas unless they have made voluntary elections at an earlier date
to become subject to the Business Organizations Code.) Further, Delaware law does not
apply as neither the Bank nor Huntsman filed a motion to request its application. See Johnson
v. Structured Asset Servs., LLC, 148 S.W.3d 711, 720 (Tex. App.-Dallas 2004, no pet.)
(citing Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759, 769 (Tex. App.-Corpus Christi
1999, pet. denied) ("[A] preliminary motion must be filed asking the court to apply another
state's laws."); see also Tex. R. Evid. 202 ("A court upon its own motion may, or upon the
motion of a party shall, take judicial notice of the constitutions, public statutes, rules,
regulations, ordinances, court decisions, and common law of every other state, territory, or
jurisdiction of the United States."). 


 While Reaud included copies of the Final New York Stock Exchange Corporate
Governance Rules in an exhibit to his motion, he used them to argue that he was not
controlled by Huntsman as a matter of evidence, and does not appear to have claimed that
they provided the substantive statutory framework under which he had been elected to serve
as a director. Absent a motion by a party, Texas law may be applied to a dispute. See
Johnson, 148 S.W.3d at 720. 


 In the absence of a request for a court to take judicial notice or proper proof that
another state's law applies, Texas courts presume that the law of the other state is identical
to Texas law. See id. Finally, in the Petition for Mandamus and Response, no party argues
that Delaware law applies. Thus, in the absence of properly developed evidence on Delaware
law, and although we believe that Delaware statues likely provide the statutory framework
that would be applicable to a Delaware corporation such as Huntsman, for purposes of this
proceeding we presume that Texas law concerning corporate directors is identical to that of
Delaware. See id.
3. The current Rules of Civil Procedure that concern discovery became effective
January 1, 1999, and reflect significant effort to define a party's discovery obligation as to
retained expert witnesses. See Tex. R. Civ. P. 194.2(f)(3) (concerning differences between
disclosure obligations for retained and nonretained experts); id. 195.3(A) (concerning when
a retained expert is required to be produced for deposition); id. 195.7 (requiring the party
retaining the expert to pay his reasonable fees for depositions).
4. See Tex. R. Civ. P. 201, 43 Tex. B.J. 767, 774 (1981, repealed 1999, 61 Tex. B.J.
1140).